# No. 25-1482

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

Claudette Jordan,

    *Plaintiff - Appellant*

v.

M&T Bank Corporation,

    *Defendant - Appellee*

## On Appeal from

United States District Court for the Northern District of Indiana

1:22-cv-00268

# REPLY BRIEF OF APPELLANT CLAUDETTE JORDAN

SUBMITTED BY:

Guerino Cento
CENTO LAW
5666 Carrollton Avenue
Indianapolis, IN 46220
(317) 908-0678
cento@centolaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ......................................................................... iii

I. INTRODUCTION .................................................................................... 1

II. ARGUMENT ........................................................................................... 2

   A. Ignores the "Stand-Alone" Provision, Which Is Central to This Case ........... 2

   B. The Bank's Internal Records Confirm a Refinance, Not a Mere Payment Plan ................................................................................................ 4

   C. The Bank's "Credit Reporting Purposes Only" Argument Fails ..................... 4

   D. The Bank's Reliance on TILA Is Misplaced and Irrelevant ........................... 5

   E. The District Court Misapplied Rule 56 ........................................................ 7

   F. Alternatively, Jordan Was Entitled to Judgment as a Matter of Law ............. 7

III. CONCLUSION ....................................................................................... 8

CERTIFICATE OF SERVICE ...................................................................... 9

CERTIFICATE OF COMPLIANCE ........................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………………………7

*Tolan v. Cotton*, 572 U.S. 650 (2014) ……………………………………………. 7

**Statutes**

15 U.S.C. § 1681, et seq. ………………………………………………….. passim

15 U.S.C. § 1601, et seq. ………………………………………………….. passim

**Constitutional Provisions**

U.S. CONST. amend. VII ....................................................................... passim

# I. INTRODUCTION

The Bank spends the entirety of its response attempting to refute, weigh, and ignore entirely evidence which the district court claimed did not exist. In so doing, the Bank's response confirms why this Court should reverse. The district court misapplied Federal Rule of Civil Procedure 56 by improperly weighing competing evidence, resolving factual disputes in favor of the Bank, drawing inferences in favor of the Bank, and failing to draw the required inferences in favor of Jordan. Accordingly, the district court's decision usurped the constitutional role of the jury and violated the Seventh Amendment.

The Bank's response also makes numerous critical admissions:

- The Bank entered into the DBP agreement with Kinnaley alone.

- The Bank has no record that Jordan ever consented to or authorized that agreement.

- The Bank's own records repeatedly describe the arrangement as a "refinance" and as a "new account."

- The Bank reported two distinct accounts to the consumer reporting agencies, both of which the agencies treated as separate loans.

Yet, the Bank insists the DBP was merely a payment plan on the existing auto loan. That position cannot be reconciled with the DBP's express terms, the Bank's contemporaneous records, or the sworn testimony of the consumer reporting agencies. At a minimum, the competing evidence created a genuine dispute for a jury. At most, the Bank's evidence was legally insufficient to defeat Jordan's entitlement to judgment as a matter of law.

The district court erred by resolving disputed facts in the Bank's favor. This Court should reverse and remand for trial—or, alternatively, direct entry of summary judgment for Jordan on liability.

## II. ARGUMENT

**A.    Ignores the "Stand-Alone" Provision, Which Is Central to This Case**

The centerpiece of Jordan's argument is the DBP's own terms, which expressly contemplate a "stand-alone" arrangement when only one of two co-borrowers authorizes the agreement. This provision is dispositive: if only one co-borrower participates, the DBP by its own terms creates a "separate and distinct" obligation of that borrower alone.

The Bank concedes this point by failing to grapple with it. In over twenty pages of argument, the Bank mentions the "stand-alone" provision only once—in a

passing reference buried in its factual recitation. Nowhere does the Bank explain why the "stand-alone" provision does not apply here, where it is undisputed that only Kinnaley authorized the DBP and Jordan did not. Nowhere does the Bank contend that Jordan's authorization was obtained or even attempted.

This silence speaks volumes. By failing to rebut Jordan's argument that the DBP's "stand-alone" clause applied, the Bank tacitly concedes that its agreement with Kinnaley created a new obligation to which Jordan was never bound. By its very terms, the DBP's "stand-alone" provisions expressly render the other borrower no longer liable for the original auto loan: "A joint loan is subject to a "stand-alone" credit under the Deficiency Balance Program **only when the loss of an obligor increases the banks chances of repayment**." Appx. 51 (emphasis added). By choosing to enter into the DBP as a "stand-alone" between itself and Kinnaley, the Bank *lost* Jordan's liability. The Bank gave it up and chose to do so without ever notifying Jordan. It cannot be allowed to continue to pretend, as the district court allowed, that this did not happen. The Bank did not have to suffer the "loss of" Jordan as an obligor, but it did choose to do exactly that.

Under Rule 56, that unrebutted evidence was more than sufficient to create a genuine dispute of fact. At a minimum, the district court erred in disregarding it.

3

## B. The Bank's Internal Records Confirm a Refinance, Not a Mere Payment Plan

The Bank insists that "nothing changed" under the Auto Loan. But its records say otherwise: The Auto Loan was coded "paid in full, was a repossession" with a $0 balance. The Bank's records state "THIS WAS REPO'D REFINANCE" and "BOOKED… PROCEEDS." The Bank furnished two accounts to the consumer reporting agencies, which all three agencies confirmed they treated as separate loans.

The Bank has no immediate record showing that account no. 0001 continued after May 2019. It did not produce an "Arch Report" for account no. 2001. Instead, it asks this Court to infer continuity when its own data indicates a payoff and refinance. That is exactly the kind of factual dispute that Rule 56 prohibits a judge from resolving.

## C. The Bank's "Credit Reporting Purposes Only" Argument Fails

The Bank contends that coding the Auto Loan as refinanced was "for credit reporting purposes only" and not probative of cancellation or refinancing. But under the FCRA, a furnisher has a statutory duty to report "accurately." Furnishing the Auto Loan as "closed due to refinance" is an admission that it was refinanced.

The Bank cannot escape liability by disclaiming the accuracy of its own credit reporting.

Nor can it alter the meaning of industry codes. The consumer reporting agencies themselves testified that the Bank furnished two separate accounts—one closed as a result of refinancing, and one open as a new account—and they treated them as separate obligations.

## D. The Bank's Reliance on TILA Is Misplaced and Irrelevant

In Section B of its brief, the Bank leans heavily on the Truth in Lending Act ("TILA") and Regulation Z to argue that the DBP was not a refinancing because no new TILA disclosures were provided. This argument fails for two independent reasons.

First, TILA compliance is not the test. The question before this Court is not whether the Bank satisfied its disclosure obligations under TILA, but whether, under the FCRA, the Bank inaccurately reported Jordan as liable for a loan she never authorized. Whether or not a lender must provide new TILA disclosures says nothing about whether the Bank's agreement with Kinnaley constituted a new, separate obligation in fact. A bank may fail to provide TILA disclosures for various

reasons, including oversight or noncompliance; however, that failure does not alter the substantive reality of a refinancing.

Second, the Bank conflates regulatory disclosure triggers with the legal definition of a new loan. TILA's disclosure provisions protect consumers by requiring certain information when credit terms are changed in specific ways. But whether the DBP was a "new loan" or "refinancing" for purposes of liability and reporting under the FCRA is a distinct inquiry. Courts have repeatedly held that statutes with different purposes cannot be used interchangeably to define rights and obligations. Compliance (or noncompliance) with TILA has no bearing on whether the Bank's own records, contracts, and reporting practices demonstrate the creation of a new loan obligation.

Thus, the Bank's invocation of TILA is a red herring. The dispositive evidence remains: (1) the DBP's "stand-alone" clause, which required Jordan's authorization and created a separate obligation when only one co-borrower participated; (2) the Bank's internal records describing the DBP as a refinance; and (3) the consumer reporting agencies' testimony that they received and treated two distinct accounts.

### E. The District Court Misapplied Rule 56

The Bank insists the district court did not weigh evidence but merely found Jordan's evidence "woefully insufficient". That characterization ignores the record because the district court expressly discounted Jordan's reliance on the DBP's express terms, disregarded the Bank's own records showing a refinance, rejected sworn consumer reporting agency testimony that two distinct accounts existed, and drew all inferences in favor of the Bank, not Jordan. This is the very judicial fact finding that the Supreme Court in *Tolan v. Cotton*, 572 U.S. 650 (2014), condemned as incompatible with Rule 56.

### F. Alternatively, Jordan Was Entitled to Judgment as a Matter of Law

Even if the district court had applied the correct standard, the Bank failed to present evidence sufficient to create a genuine issue of material fact. The Bank's only evidence is its corporate representative's testimony, which is directly contradicted by its own documents and the testimony of the consumer reporting agencies. Under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), conclusory testimony is not enough to defeat summary judgment. Jordan established that she never authorized the DBP, that the Bank proceeded under the terms of its own DBP to create a "stand-alone" refinance for which only Kinnaley was liable, treated and

furnished that new loan as a refinance, and then inaccurately and erroneously reported and verified Jordan as liable for that "stand-alone" DBP. Accordingly, Jordan, not the Bank, was entitled to judgment as a matter of law.

### III. CONCLUSION

For these reasons, this Court should reverse the judgment below. The case should be remanded for trial, or alternatively, the Court should direct entry of summary judgment in favor of Jordan on liability under the FCRA.

SUBMITTED BY:

*S/Guerino Cento*
CENTO LAW
5666 Carrollton Avenue
Indianapolis, IN 46220
cento@centolaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<em>S/Guerino Cento</em>

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of F̃ed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 1,431 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Apple Pages in Times New Roman in 14-point font in the text and 12-point font in the footnotes.

*S/Guerino Cento*